UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| JUDY JONES, *Individually and as Administrator of the Estate of* RAYMOND JONES,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil No. 5:23-cv-00226-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Two medical professionals at a Veterans Affairs ("VA") hospital lifted an elderly Mr. Jones off the ground while he was belted into his motorized wheelchair. He was later diagnosed with a hip fracture and required surgery. Four months later, he died. Did the incident at the VA cause Mr. Jones's fracture and subsequent death? His wife says yes. The United States says no. Because Ms. Jones's expert is qualified to opine on causation and standard of care, the Court will **DENY** the United States' Motion in Limine and Motion for Summary Judgment. **[R. 19.]**

I

On September 1, 2022, Plaintiff Judy Jones became concerned that her seventy-six-year-old husband, Raymond Jones, was suffering from a urinary tract infection. [R. 1 at 3; R. 22 at 2–3; R. 19 at 3.] She brought him to the Veteran's Affairs (VA) Hospital in Lexington, Kentucky to be examined. [R. 1 at 3; R. 22 at 2–3; R. 19 at 3.] Due to various spine-related conditions, Plaintiff Jones states that Mr. Jones was a "functional paraplegic." [R. 22 at 1.] He used a

motorized "Jazzy" wheelchair for locomotion, a "Hoyer lift for transfers, and a trapeze bar for bed mobility." *Id.*

In the VA Emergency Department, Nurse Mitchell and Technician Burke attempted to transfer Mr. Jones out of his wheelchair and onto the examination table using a "motorized ceiling mounted lift." *Id.* at 3; [R. 19 at 3.] Mitchell and Burke secured Mr. Jones's sling to the lift. [R. 19 at 3; R. 22 at 3; R. 22-2 at 9.] Then, they began raising the lift. [R. 19 at 3; R. 22 at 4; R. 22-2 at 11.] At some point, Mitchell realized that the pair had neglected to detach Jones from his wheelchair before lifting him off the ground. [R. 19 at 3; R. 22 at 4; R. 22-2 at 11.] She then instructed Burke to stop the lift. [R. 19 at 3; R. 22 at 4; R. 22-2 at 11.]

The details of the subsequent medical examination are disputed. Both parties agree that, after being examined, Jones was diagnosed with a urinary tract infection and sent home. [R. 19 at 4; R. 22 at 5.] The following day, an ambulance was called for Mr. Jones, who was experiencing "pain all over." [R. 22-8.] At Baptist Health, he was diagnosed with a variety of issues, including pneumonia, sepsis, and a fracture in his left hip. [R. 22-9.] Mr. Jones underwent surgery to repair the fracture. *Id.* However, Ms. Jones states that his condition continued to deteriorate after the surgery. [R. 22 at 7.] On January 18, 2023, he passed away. *Id.* On July 28, 2023, after exhausting her administrative remedies under the Federal Tort Claims Act, Ms. Jones brought suit against the United States for medical negligence. [R. 1.] She seeks damages for loss of consortium, medical expenses, loss of earning power, funeral and burial costs, and pain and suffering. *Id.* Now, the United States requests that Ms. Jones's causation expert be excluded and summary judgment be entered. [R. 19.]

## II

The Federal Tort Claims Act (FTCA) waives the federal government's sovereign immunity in "certain tort suits." *Allen v. United States*, 83 F.4th 564, 567 (6th Cir. 2023). An FTCA claim is a claim:

> (1) 'against the United States,' (2) 'for money damages,' (3) 'for injury or loss of property, or personal injury or death,' (4) 'caused by the negligent or wrongful act or omission of any employee of the Government,' (5) 'while acting within the scope of his office or employment,' (6) 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'

*Id.* (quoting *Brownback v. King*, 592 U.S. 209, 212 (2021) and 28 U.S.C. § 1346). Such claims must be brought in federal court, and the federal court has jurisdiction only insofar as the claim alleges the six elements contained in § 1346(b). *Brownback*, 592 U.S. at 212.

FTCA claims are generally adjudicated under the law of the state where the injury occurred. *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995). Moreover, the parties agree that Kentucky medical negligence law controls here. *Id.*; [*see* R. 22 at 7; R. 19 at 2.] In Kentucky, "the plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006); *see also Mullins v. Appalachian Reg'l Healthcare, Inc.*, 707 S.W.3d 1, 7 (Ky. Ct. App. 2025) ("In a medical negligence case, a plaintiff must prove the applicable medical standard of care, a breach of that care, and an injury resulting from that breach of care.").

The United States now contends that (1) Dr. Black lacks a basis for her standard of care opinion; (2) Dr. Black's causation opinion is inadmissible; and (3) without her causation and

3

standard of care opinions, the United States is entitled to summary judgment. [R. 19.] The Court disagrees as to points one and two. Accordingly, the United States' third argument is moot.

## A

Federal Rule of Evidence 702 permits an expert to give opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. A witness qualifies as an expert on the basis of his or her "knowledge, skill, experience, training, or education[.]" Fed. R. Evid. 702.

The trial court serves an important gatekeeping function by ensuring that expert testimony is both reliable and relevant. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see* Fed. R. Evid. 702 advisory committee's note to 2023 amendment. ("Judicial gatekeeping is essential because . . . jurors may [] lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support."); *see also In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 348 n.7 (6th Cir. 2024) ("Rule 702's recent amendments [] were drafted to correct some court decisions incorrectly holding 'that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility.'" (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment)). As such, the proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

**B**

First, the United States asserts that Dr. Black, Ms. Jones's expert, lacks a basis for her opinion that the VA failed to meet its standard of care when it lifted Mr. Jones without first extracting him from his chair. [R. 19 at 14–18.] In particular, it notes that Dr. Black has never personally "attached a patient lifting device to a sling" and has no experience operating a lift. *Id.* at 15. Ms. Jones disagrees, citing Dr. Black's specialization in treating geriatric patients and her familiarity with proper transfer principles. [R. 22 at 9.]

The Court agrees with Jones. Dr. Black is a physician who specializes in treating geriatric patients. [*See* R. 19-12.] She is board certified in family medicine, holds a certificate in geriatric medicine, and is a certified medical director for long term care facilities. *Id.* Dr. Black has spent much of her career directing a long-term care facility and working in home care treating quadriplegic and paraplegic patients. *Id.*; [R. 19-5 at 11–12.] She has also served as a professor of geriatric medicine at Emory University School of Medicine for eight years. [R. 19-12; R. 19-5 at 11–12.] Dr. Black's CV boasts a litany of awards and teaching appointments in the field. [R. 19-12.] As a consequence of her training and experience, Dr. Black has personally participated in transferring a patient from a wheelchair to a stretcher "more [times] than [she] can recall." [R. 19-5 at 13.] Although Dr. Black may not have operated the lift at issue, her experience with transferring geriatric and limited-mobility patients qualifies her to opine on the standard of care involved. *See In re Heparin Prods. Liab. Litig.*, 803 F. Supp. 2d 712, 747 (N.D. Ohio 2011), *aff'd sub nom. Rodrigues v. Baxter Healthcare Corp.*, 567 F. App'x 359 (6th Cir. 2014) ("'[A] doctor need not be a specialist in the exact area of medicine implicated by the plaintiff's injury.' So long as the expert has some specialized knowledge as a result of training or experience relevant to the opinions he offers, his testimony will meet the qualification

5

requirement.") (internal citation omitted).  Accordingly, the Court will overrule the United States' objection.[1]

## C

Next, the United States contends that Black's causation opinion is inadmissible because it fails to address possible alternative causes.  [R. 19 at 8–14.]  On this point, the Court disagrees.

## 1

"One appropriate method for making a determination of causation for an individual instance of disease is known as 'differential diagnosis[.]'" *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001). "Differential diagnosis, or differential etiology, is a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated."[2] *Id.* (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir.1999)).  When performing a differential diagnosis or etiology, "[t]he physician considers all relevant potential causes of the symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history." *Id.* (internal citation omitted).  A differential diagnosis will be admissible insofar as the physician (1) "objectively ascertains, to the extent possible, the nature of the patient's injury"; (2) "'rules in' one or more causes of the injury using a valid methodology"; and (3) "engages in 'standard diagnostic techniques by which doctors normally rule out alternative causes' to reach a

---

[1] The United States also avers that Black's standard of care testimony is neither relevant nor helpful because it does not stem from her scientific, technical, or specialized knowledge.  In support of this argument, it cites Dr. Black's statement that "common sense" suggests a patient shouldn't be lifted off the ground with a wheelchair dangling from his lap.  The Court is similarly unpersuaded by that objection.  Dr. Black's opinion is informed by her experience with transferring patients.  That something may be a matter of "common sense" to Dr. Black does not automatically divorce her opinion from her specialized knowledge.

[2] "A diagnosis is an opinion about what disorder caused a set of symptoms observed, whereas an etiology is an opinion about what caused the disorder diagnosed." *Brown v. Fehr*, No. 23-CV-11244, 2025 WL 868620, at *3 (E.D. Mich. Mar. 20, 2025) (citing *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 669 (6th Cir. 2010)).

conclusion as to which cause is most likely." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir. 2009) (internal citation omitted); *see also Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) ("Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." (citing *Best*, 563 F.3d at 177))).

**2**

In support of its Motion, the United States asserts that Black failed to adequately 'rule out' possible alternative causes of Jones's fracture. On the United States' view, Dr. Black presumes that the lift incident caused Jones's fracture simply because the fracture appeared after the incident. *See Rolen v. Hansen Beverage Co.*, 193 F. App'x 468, 473 (6th Cir. 2006) ("Expert opinions based upon nothing more than the logical fallacy of *post hoc ergo propter hoc* typically do not pass muster under *Daubert*."). Jones disagrees, emphasizing Dr. Black's consideration of other possible causes including a pre-existing fracture, prior transfers, and unrelated accidents. [R. 22 at 10–13.]

Again, Jones is correct. Doctors opining on causation need not rule out every possible cause. *Best*, 563 F.3d at 181 ("[D]octors need not rule out every conceivable cause in order for their differential-diagnosis-based opinions to be admissible."); *Rheinfrank v. Abbott Lab'ys, Inc.*, No. 1:13-CV-144, 2015 WL 13022172, at *7 (S.D. Ohio Oct. 2, 2015), *aff'd*, 680 F. App'x 369 (6th Cir. 2017) ("[T]he fact that other potential causes may remain 'uneliminated' goes to the accuracy of the conclusion, not the soundness of the methodology, and would be properly addressed on cross-examination."). However, a doctor performing a differential diagnosis "must provide a reasonable explanation as to why 'he or she has concluded that [any alternative cause

7

suggested by the defense] was not the sole cause.'" *Best*, 563 F.3d at 179 (internal citation omitted).

      Dr. Black meets this standard. Dr. Black conducted a fulsome review of Jones's medical records from before and after the incident. [R. 19-7 at 1.] She further considered imaging reports, deposition testimony, specifications for Jones's wheelchair and lap belt, and images of the same. *Id.* Her review of these materials yielded the conclusion that "Jones suffered a left hip fracture on September 1, 2022 when VA employees, Kimberly Mitchell and Logan Burke, attempted to transfer Mr. Jones from his wheelchair to a stretcher with a motorized lift while he was still restrained by his lap belt to his wheelchair." *Id.* at 3. She found that "Jones left hip fracture resulted in further disability and dysfunction of Mr. Jones' ability to transfer himself in bed and to be transferred from bed. Immobilization and an inability to transfer is associated with increased morbidity and mortality. It would also exacerbate his pre-existing congestive heart disease." *Id.* Hence, according to Dr. Black, "Mr. Jones's deteriorated condition, secondary to his left hip fracture, was a substantial factor in causing his death." *Id.*

      In reaching this conclusion, Dr. Black 'ruled out' other possible causes of the fracture. For instance, she considered the possibility that osteoperosis was responsible for the fracture. [R. 19-5 at 29–30.] But she rejected that explanation because her review of his medical history did not yield "documentation of past fractures." *Id.* Dr. Black also ruled out the possibility that the fracture was caused by an unrelated accident. *Id.* In support, she noted that Jones's medical records did not reveal any other falls or incidents that might result in fracturing. *Id.* Moreover, the Court is not persuaded by the United States' objections. And to the extent that Dr. Black's methodology is lacking in rigor, her conclusions can be challenged on cross-examination. *See Best*, 563 F.3d at 181 ("[I]f Dr. [Black] failed to consider some other likely cause, [the United

8

States] is free to attack Dr. [Black's] opinion on that basis at trial."); *cf. Finley v. Mora,* No. 20-11739, 2022 WL 3970829, at *10 (E.D. Mich. Aug. 31, 2022), *aff'd*, No. 22-1886, 2023 WL 7550447 (6th Cir. Nov. 14, 2023) (excluding a causation opinion that failed to consider *any* alternate causes).

### D

One final note: this matter will be adjudicated in a bench trial. 28 U.S.C. § 2402; *see also Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005) ("FTCA lawsuits are tried in federal district court without a jury."); [R. 10; R. 36.] Hence, "although all of [Jones's] experts must pass *Daubert* scrutiny before the Court may rely on their testimony to find in [Jones's] favor, the 'usual concerns' about shielding the jury from unreliable expert testimony 'obviously do not arise[.]'" *Douglas v. United States*, No. CIV. 10-26-ART, 2011 WL 2633612, at *6 (E.D. Ky. July 5, 2011) (quoting *Atty. Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009)); *see also Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 851 (6th Cir. 2004) ("[D]istrict courts must act as 'gatekeepers' to protect *juries* from misleading or unreliable expert testimony.") (emphasis added).

### III

For all these reasons, the Court will deny the United States' request to exclude Dr. Black's testimony. And because the United States' Motion for Summary Judgment hinges on its request to exclude Dr. Black, the Court will deny that Motion as well. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The United States' Motion in Limine **[R. 19]** to Exclude Dr. Black is **DENIED**; and
2. The United States's Motion for Summary Judgment **[R. 19]** is **DENIED as moot.**

This the 2d day of June, 2025.

Gregory F. Van Tatenhove
United States District Judge